JANET B. STONE; ANNIE B. LOCKLEAR; MARY BARBARA WASHINGTON; CARRIE M. GALLOPS AND WILLIAM E. PEELE, JR., CO-ADMINISTRATORS OF THE ESTATE OF

STONE v. N.C. DEPT. OF LABOR

[347 N.C. 473 (1998)]

ROSE GIBSON PEELE; JIMMIE BROADY, ADMINISTRATOR OF THE ESTATE OF MINNIE THOMPSON; LILLIE B. DAVIS; JOHNNY DAWKINS; SHARON E. TOWNSEND; GEORGIA ANN QUICK; RONALD WAYNE POOL; ALFORENCE ANDERSON, ADMINISTRATOR OF THE ESTATE OF PEGGY JEAN ANDERSON; DAVID MACK ALBRIGHT, ADMINISTRATOR OF THE ESTATE OF DAVID MICHAEL ALBRIGHT; FRED ERNEST BARRINGTON, SR. AND NELSON BARRINGTON; CO-ADMINISTRATORS OF THE ESTATE OF JOSEPHINE BARRINGTON, PEARLIE GAGNON, ADMINISTRATRIX OF THE ESTATE OF JOHN R. GAGNON; MATTIE FAIRLEY; MARTHA WATERS; EVELYN WALL; KENNETH WHITE; CONESTER WILLIAMS; JOHN SANDERS; LARRY BELLAMY, ADMINISTRATOR OF THE ESTATE OF ELIZABETH ANN BELLAMY; SARAH WILLIAMS; NELSON BARRINGTON AND LINDA OWENS, CO-ADMINISTRATORS OF THE ESTATE OF FRED BARRINGTON, JR.; ADA BLANCHARD; AUDREY SUE SCOTT; LETHA TERRY; ELAINE GRIFFIN; KIM MANGUS; SYLVIA MARTIN; GLORIA MALACHI; ALBERTA MCRAE; SANDRA MCPHAUL; EVANDER LYNCH, ADMINISTRATOR OF THE ESTATE OF JANICE LYNCH; BERNETTA ODOM; THOMAS OATES, III; KATIE NICHOLSON; PAMELA MOORE; PRISCILLA MURPHY; SALLY MURPHY; NORA BUSH; THOMAS COBLE; BRENDA CHAMBERS, ADMINISTRATRIX OF THE ESTATE OF ROSIE ANN CHAMBERS; BERNARD CAMPBELL; ROSE CHAPPELL; MARTHA NELSON, ADMINISTRATRIX OF THE ESTATE OF MARTHA RATLIFF; DEBORAH PITTMAN; ANNETTE PIERCE; ZELDA ROBERTS; RICHARD ROBERTS; CLEO REDDICK; DELORES PAUNCY; BOBBY QUICK; DELORES QUICK; LULA SMITH, ADMINISTRATRIX OF THE ESTATE OF CYNTHIA RATLIFF; WILLIE QUICK; MARY BRYANT; DONNA BRANCH DAVIS; DORIS BOSTIC; RACHEL INGRAM; RICHARD M. LIPFORD; ALICE S. WEBB, ADMINISTRATRIX OF THE ESTATE OF JEFFREY A. WEBB; BARBARA SHAW; FLORA C. BANKS, ADMINISTRATRIX OF THE ESTATE OF MARGARET TERESA BANKS; JAMES THOMAS BANKS; LINDA CAROL ELLISON; PAUL SAUNDERS, ADMINISTRATOR OF THE ESTATE OF MARY LILLIAN WALL; JOANNE PAGE, ADMINISTRATRIX OF THE ESTATE OF GAIL VIVIAN CAMPBELL; VELMA BUTLER; ROY FUNDERBURK; MARY SUE RICH, ADMINISTRATRIX OF THE ESTATE OF DONALD BRUCE RICH; PEGGY BROWN, ADMINISTRATRIX OF THE ESTATE OF MARY ALICE QUICK; CAROLYN M. RAINWATER; MARGIE MORRISON, ADMINISTRATRIX OF THE ESTATE OF MICHAEL A. MORRISON; SHERMAN McDONALD; WILLIAM G. HAMILTON AND MARIE A. HAMILTON; BRENDA F. BAILEY; ELTON RAY CAFFERATA; PAMELA S. COOPER; WILLIAM KELLY, JR., ADMINISTRATOR OF THE ESTATE OF BRENDA GAIL KELLY; CATHERINE DAWKINS, ADMINISTRATRIX OF THE ESTATE OF PHILIP R. DAWKINS; JEANETTE L. SMITH; RUBY BULLARD SELLERS; REGGIE SMITH; CYNTHIA FAYE GRAHAM; WILLIAM WINSTON SMITH, SR.; WILLIAM NOCONDA SMITH, JR.; BETTY EUBANKS, ADMINISTRATRIX OF THE ESTATE OF CYNTHIA S. WALL; BETTY B. WHITE; DARRELL LEONARD WILKINS, ADMINISTRATOR OF THE ESTATE OF ROSE LYNETTE JACOBS WILKINS; ANGELA LYNN COULTER, ADMINISTRATRIX OF THE ESTATE OF JOSIE MAE COULTER; FELTON ALBERT HATCHER; PATRICIA W. HATCHER; MILDRED LASSITER MOATES; OLIN DELLANO MOATES; GLADYS FAYE NOLAN; RONNIE CARROL NOLAN; HOMER F. JARRELL, ADMINISTRATOR OF THE ESTATE OF BERTHA JARRELL; LORETTA SCOTT; LORETTA GOODWIN; BENITA INGRAM; MATTIE P. NICHOLSON; MARY ANN DAIREN; MONICA McDOUGALD; ALLISON GRIFFIN; BRENDA MCDOUGALD; AND ROY S. MORRISON, JR. v. NORTH CAROLINA DEPARTMENT OF LABOR AND NORTH CAROLINA DEPARTMENT OF LABOR, OCCUPATIONAL SAFETY AND HEALTH DIVISION

No. 81PA97

(Filed 6 February 1998)

**1. State § 24 (NCI4th)— Tort Claims action—failure to inspect chicken plant—public duty doctrine—applicability**

The Industrial Commission erred in an action arising from injuries and deaths in a fire at a chicken plant which had never received a state safety inspection by denying defendants' Rule 12 motions to dismiss plaintiffs' Tort Claims action. Under the Tort Claims Act, the State is liable only under circumstances in which a private person would be liable, and private persons do not possess public duties. The public duty doctrine, by barring negligence actions against a governmental entity absent a "special relationship" or a "special duty" to a particular individual, serves the legislature's express intention to permit liability against the State only when a private person would be liable. Any change in the State's sovereign immunity to permit the State to be liable in a situation in which a private person could not should be made by the legislature.

**2. Public Officers and Employees § 35 (NCI4th)— Tort Claims Act—failure to inspect chicken plant—public duty doctrine—*Braswell* applied**

Although plaintiffs in an action arising from a fire in a chicken processing plant which had never received a safety inspection argued that the public duty doctrine bars only claims against local governments for failure to prevent crimes, the policies underlying recognition of the public duty doctrine in *Braswell v. Braswell*, 330 N.C. 363, apply here. Just as the limited resources of law enforcement were recognized in *Braswell*, the limited resources of the defendants in this case are recognized and a judicially imposed overwhelming burden of liability for failure to prevent every employer's negligence resulting in injuries or deaths to employees is refused.

**3. State § 46 (NCI4th)— Tort Claims Act—fire in chicken plant—public duty doctrine—sufficiency of pleadings**

Plaintiffs' specific claims under the Tort Claims Act arising from injuries and deaths in a fire at a chicken plant fail because the duty to inspect imposed upon defendants under N.C.G.S. § 95-4 is for the benefit of the public, not individual claimants, so that plaintiffs' claims fall within the public duty

**STONE v. N.C. DEPT. OF LABOR**

[347 N.C. 473 (1998)]

doctrine. Plaintiffs must allege facts placing the claims within one of the exceptions to the doctrine, but they make no such "special relationship" or "special duty" allegations. Nothing in this opinion overrules the myriad reported and unreported cases allowing recovery against the State under the Tort Claims Act.

Justice ORR dissenting.

Justice FRYE joins in this dissenting opinion.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 125 N.C. App. 288, 480 S.E.2d 410 (1997), affirming a decision of the Industrial Commission denying defendants' motions pursuant to N.C.G.S. § 1A-1, Rules 12(b)(1), (2), and (6), to dismiss plaintiffs' claims. Heard in the Supreme Court 20 November 1997.

*Adams, Kleemeier, Hagan, Hannah & Fouts, P.L.L.C., by J. Alexander S. Barrett; Kitchin, Neal, Webb & Futrell, by Henry L. Kitchin; Fuller, Becton, Slifkin & Bell, by Charles L. Becton; Edward L. Bleynat, Jr., and Woodrow W. Gunter, II, for plaintiff-appellees.*

*Michael F. Easley, Attorney General, by David Roy Blackwell, Elisha H. Bunting, Jr., and Ralf F. Haskell, Special Deputy Attorneys General, for defendant-appellants.*

WHICHARD, Justice.

Plaintiffs commenced this negligence action against defendants, the North Carolina Department of Labor and its Occupational Safety and Health Division, pursuant to the Tort Claims Act, N.C.G.S. §§ 143-291 to -300.1 (1993) (amended 1994). Plaintiffs sought damages for injuries or deaths resulting from a fire at the Imperial Foods Products plant in Hamlet, North Carolina. Defendants moved, pursuant to N.C.G.S. § 1A-1, Rules 12(b)(1), (2), and (6), to dismiss plaintiffs' claims. Deputy Commissioner D. Bernard Alston denied the motions. The full Commission affirmed and adopted his decision.

The Court of Appeals affirmed. It held that N.C.G.S. § 95-4, which describes the authority, power, and duties of the Commissioner of Labor, imposed a duty upon defendants to inspect the workplaces of North Carolina and that the breach of this duty gave rise to plaintiffs' action for negligence. *Stone v. N.C. Dep't of Labor*, 125 N.C. App. 288,

291-92, 480 S.E.2d 410, 413 (1997). It further held that the public duty doctrine did not apply to actions brought against the State under the Tort Claims Act. *Id.* at 291, 480 S.E.2d at 412. On 5 June 1997 this Court granted defendants' petition for discretionary review.

Because these claims arise upon defendants' motions to dismiss, we treat plaintiffs' factual allegations, which follow, as true. *See Sorrells v. M.Y.B. Hospitality Ventures of Asheville*, 332 N.C. 645, 646, 423 S.E.2d 72, 72 (1992). On 3 September 1991 a fire started in a hydraulic line near a deep fat fryer in the Imperial Foods Products chicken plant (the plant) in Hamlet, North Carolina. The fire grew in intensity and spread rapidly through the interior of the plant. Plaintiffs are either former employees of Imperial Foods who suffered injury in the fire or personal representatives of the estates of employees who died in the fire. They or their decedents (plaintiffs) were lawfully inside the plant at the time of the fire. Plaintiffs could not easily escape the plant or the fire because the exits in the plant were unmarked, blocked, and inaccessible. After the fire the North Carolina Department of Labor and its Occupational Safety and Health Division (defendants) conducted their first and only inspection in the plant's eleven-year history of operation. As a result of this inspection, defendants discovered numerous violations of the Occupational Safety and Health Act of North Carolina (OSHANC), including the plant's inadequate and blocked exits and inadequate fire suppression system. Defendants issued eighty-three citations against Imperial Foods Products for violations of OSHANC standards. Plaintiffs alleged, *inter alia*, that defendants had a duty under OSHANC to inspect the plant, defendants breached that duty by failing to inspect until after the fire, defendants' breach caused plaintiffs' injuries or deaths, and plaintiffs' injuries or deaths entitle them to damages in tort.

Plaintiffs have asserted a common law negligence action against the State under the Tort Claims Act. To recover damages under the common law of negligence, private parties "must establish (1) a legal duty, (2) a breach thereof, and (3) injury proximately caused by such breach." *Kientz v. Carlton*, 245 N.C. 236, 240, 96 S.E.2d 14, 17 (1957).

Defendants argue that plaintiffs have failed to state a claim upon which relief can be granted because defendants did not owe a duty to the individual plaintiffs due to the public duty doctrine. This doctrine, articulated in *Braswell v. Braswell*, 330 N.C. 363, 370-71, 410 S.E.2d 897, 901-02 (1991), provides that governmental entities and their

agents owe duties only to the general public, not to individuals, absent a "special relationship" or "special duty" between the entity and the injured party. Defendants also contend that because plaintiffs have not stated a claim, the Industrial Commission lacks personal and subject matter jurisdiction over defendants.

The issue, whether the Court of Appeals erred in affirming the Industrial Commission's denial of defendants' motions to dismiss, requires resolution of three sub-issues. First, does the public duty doctrine apply to claims brought under the Tort Claims Act? Second, if it does, does it apply to state agencies like defendants? Finally, if the doctrine applies, does an exception to it apply as well?

[1] The Tort Claims Act provides that the State is liable "under circumstances where [it], if a private person, would be liable to the claimant in accordance with the laws of North Carolina." N.C.G.S. § 143-291. Defendants recognize that the State, like a private person, may be subject to liability for negligence under the terms of this legislation. They contend, however, that they are not liable to plaintiffs because under the public duty doctrine, they owe no legal duty to the individual plaintiffs. Defendants assert that their obligation under N.C.G.S. § 95-4 to inspect workplaces in North Carolina serves the public at large, not individual employees. *See Braswell*, 330 N.C. at 370-71, 410 S.E.2d at 901. Plaintiffs assert, and the Court of Appeals held, that the public duty doctrine does not apply to bar plaintiffs' claims because it does not apply to the liability of a private person, and under the Tort Claims Act, the State is liable if a private person would be. We disagree, and we reverse the Court of Appeals.

In construing the Tort Claims Act to determine whether it incorporates the common law public duty doctrine, "our primary task is to ensure that the purpose of the legislature, the legislative intent, is accomplished." *Electric Supply Co. of Durham v. Swain Elec. Co.*, 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991). "Legislative purpose is first ascertained from the plain words of the statute." *Id.* Under the Act the State is liable *only* under circumstances in which a private person would be. N.C.G.S. § 143-291.

Private persons do not possess public duties. Only governmental entities possess authority to enact and enforce laws for the protection of the public. *See Grogan v. Commonwealth*, 577 S.W.2d 4, 6 (Ky.) (recognizing that if the State were held liable for a failure to enforce laws and regulations establishing safety standards for construction and use of buildings, the State's *status* as a governmental

entity "would be the only basis *for* holding a city or state liable, because only a governmental entity possesses the authority to enact and enforce laws for the protection of the public"), *cert. denied,* 444 U.S. 835, 62 L. Ed. 2d 46 (1979). If the State were held liable for performing or failing to perform an obligation to the public at large, the State would have liability when a private person could *not.* The public duty doctrine, by barring negligence actions against a governmental entity absent a "special relationship" or a "special duty" to a particular individual, serves the legislature's express intention to permit liability against the State only when a private person could be liable. *See Braswell,* 330 N.C. at 370-71, 410 S.E.2d at 901-02. Thus, the plain words of the statute indicate an intent that the doctrine apply to claims brought under the Tort Claims Act.

Our determination of legislative intent is also "guided by . . . certain canons of statutory construction." *Swain Elec. Co.,* 328 N.C. at 656, 403 S.E.2d at 294. Acts, such as the Tort Claims Act, that permit suit in derogation of sovereign immunity should be strictly construed. *Floyd v. N.C. State Highway & Pub. Works Comm'n,* 241 N.C. 461, 464, 85 S.E.2d 703, 705 (1955), *overruled in part on other grounds by Barney v. N.C. State Highway Comm'n,* 282 N.C. 278, 284-85, 192 S.E.2d 273, 277 (1972). Statutes in derogation of the common law likewise should be strictly construed. *McKinney v. Deneen,* 231 N.C. 540, 542, 58 S.E.2d 107, 109 (1950).

In passing the Tort Claims Act, the legislature incorporated the common law of negligence. *MacFarlane v. N.C. Wildlife Resources Comm'n,* 244 N.C. 385, 387, 93 S.E.2d 557, 559-60 (1956), *overruled in part on other grounds by Barney,* 282 N.C. at 284-85, 192 S.E.2d at 277. The public duty doctrine forms an integral part of that common law. *Braswell,* 330 N.C. at 370, 410 S.E.2d at 901. Plaintiffs ask us to construe the Tort Claims Act broadly so as to erase a fundamental common law doctrine. We decline to do so. Until the legislature clearly expresses that immunity is to be waived even in situations in which the common law public duty doctrine would otherwise apply to bar a negligence claim, we construe the Tort Claims Act as incorporating the existing common law rules of negligence, including that doctrine. *See Floyd,* 241 N.C. at 464, 85 S.E.2d at 705; *McKinney,* 231 N.C. at 542, 58 S.E.2d at 109. Any change in the State's sovereign immunity to permit the State to be liable in a situation in which a private person could not should be made by the legislature, not by this Court under the guise of construction.

**[2]** Plaintiffs argue that even if the public duty doctrine applies to claims brought under the Tort Claims Act, it does not apply in this case. They contend that it applies only to claims against *local governments* for failure to *prevent crimes*.[1]

When this Court first recognized the public duty doctrine, it discussed the doctrine in terms of the facts before it. *See Braswell,* 330 N.C. at 370, 410 S.E.2d at 901 (addressing the public duty doctrine as it applied to a plaintiff's claims against the Sheriff of Pitt County for failure to provide her with protection). In the context of a claim against a sheriff, we explained that, under the doctrine, "a *municipality* and its agents act for the benefit of the public, and therefore, there is no liability for the failure to furnish *police protection* to specific individuals." *Id.* (emphasis added).

Once this Court recognized the doctrine, however, our Court of Appeals applied it to a variety of local governmental operations. *See, e.g., Simmons v. City of Hickory,* 126 N.C. App. 821, 823, 487 S.E.2d 583, 585 (1997) (holding that the public duty doctrine applied to bar claim against city for negligently inspecting homes and issuing building permits and stating that "[t]he public duty doctrine has been applied to a variety of statutory governmental duties"); *Sinning v. Clark,* 119 N.C. App. 515, 518, 459 S.E.2d 71, 73 (holding that the public duty doctrine applied to bar a claim against a municipality, the city building inspector, and the city code administrator for gross negligence in an inspection of a home and stating that this doctrine "has been applied by our [c]ourts to various statutory governmental duties"), *disc. rev. denied,* 342 N.C. 194, 463 S.E.2d 242 (1995); *Davis v. Messer,* 119 N.C. App. 44, 55-56, 457 S.E.2d 902, 909 (holding that the public duty doctrine applied to a claim against a fire chief, a fire department, a town, and a county for negligence in their failure to complete their effort to extinguish a fire in plaintiff's home), *disc. rev. denied,* 341 N.C. 647, 462 S.E.2d 508 (1995); *Prevette v. Forsyth County,* 110 N.C. App. 754, 758, 431 S.E.2d 216, 218 (holding that the

---

1. Plaintiffs also argue that *Jordan v. Jones,* 314 N.C. 106, 331 S.E.2d 662 (1985) (permitting plaintiff to bring a tort action against the Department of Transportation), supports their position that the public duty doctrine does not bar their claim and that they may recover from the State for its negligent failure to take action that could have protected its citizens. *Jordan* was decided before this Court recognized the public duty doctrine in *Braswell,* 330 N.C. at 371, 410 S.E.2d at 902. The Court in *Jordan* did not consider whether plaintiff's claims were barred by the public duty doctrine. Thus, *Jordan* is inapplicable to the question of whether the public duty doctrine applies to claims against the State. Plaintiffs make no argument that the holding and reasoning of *Jordan* fall within one of the exceptions to the public duty doctrine.

## STONE v. N.C. DEPT. OF LABOR

[347 N.C. 473 (1998)]

public duty doctrine applied to bar wrongful death claim against county and against director and employee of the county animal control shelter for failing to protect plaintiff from dogs which defendants knew were dangerous), *disc. rev. denied,* 334 N.C. 622, 435 S.E.2d 338 (1993). The Court of Appeals has also applied the doctrine to a state agency. *See Humphries v. N.C. Dep't of Correction,* 124 N.C. App. 545, 547, 479 S.E.2d 27, 28 (1996) (holding that the doctrine barred claim against Department of Correction for alleged negligence in the supervision of a probationer), *disc. rev. improvidently allowed,* 346 N.C. 269, 485 S.E.2d 293 (1997). While this Court has not heretofore applied the doctrine to a state agency or to a governmental function other than law enforcement, we do so now.

The policies underlying recognition of the public duty doctrine in *Braswell* support its application here. In *Braswell* we explained that the doctrine was necessary to prevent "an overwhelming burden of liability" on governmental agencies with "limited resources." *Braswell,* 330 N.C. at 370-71, 410 S.E.2d at 901. We stated:

"The amount of protection that may be provided is limited by the resources of the community and by a considered legislative-executive decision as to how those resources may be deployed. For the courts to proclaim a new and general duty of protection in the law of tort . . . would inevitably determine how the limited police resources . . . should be allocated and without predictable limits."

*Id.* at 371, 410 S.E.2d at 901 (quoting *Riss v. City of New York,* 22 N.Y.2d 579, 581-82, 240 N.E.2d 860, 860-61, 293 N.Y.S.2d 897, 898 (1968)). Just as we recognized the limited resources of law enforcement in *Braswell,* we recognize the limited resources of defendants here. Just as we there "refuse[d] to judicially impose an overwhelming burden of liability [on law enforcement] for failure to prevent every criminal act," *id.* at 370-71, 410 S.E.2d at 901, we now refuse to judicially impose an overwhelming burden of liability on defendants for failure to prevent every employer's negligence that results in injuries or deaths to employees. "[A] government ought to be free to enact laws for the *public protection* without thereby exposing its supporting taxpayers . . . to liability for failures of omission in its attempt to enforce them. It is better to have such laws, even haphazardly enforced, than not to have them at all." *Grogan,* 577 S.W.2d at 6 (emphasis added).

Further, we do not believe the legislature, in establishing the Occupational Safety and Health Division of the Department of Labor in 1973, intended to impose a duty upon this agency to each *individual* worker in North Carolina. Nowhere in chapter 95 of our General Statutes does the legislature authorize a private, individual right of action against the State to assure compliance with OSHANC standards. Rather, the most the legislature intended was that the Division prescribe safety standards and secure some reasonable compliance through spot-check inspections made "as often as practicable." N.C.G.S. § 95-4(5) (1996). "In this way the safety conditions for work[ers] in general would be improved." *Nerbun v. State,* 8 Wash. App. 370, 376, 506 P.2d 873, 877 (holding that Washington Department of Labor did not owe an absolute duty to individual workers and concluding that the Washington legislature intended only that the Department act on behalf of workers in general), *disc. rev. denied,* 82 Wash. 2d 1005 (1973).

[3] Because we hold that the legislature intended the public duty doctrine to apply to claims against the State under the Tort Claims Act, we now apply the doctrine to the facts of this case. The general common law rule provides that governmental entities, when exercising their statutory powers, act for the benefit of the general public and therefore have no duty to protect specific individuals. *See Braswell,* 330 N.C. at 370, 410 S.E.2d at 901; *see also DeFusco v. Todesca Forte, Inc.,* 683 A.2d 363, 365 (R.I. 1996) (recognizing that with certain exceptions, "[t]he public duty doctrine shields the state and its political subdivisions from tort liability arising out of discretionary governmental actions that by their nature are not ordinarily performed by private persons"). Because the governmental entity owes no particular duty to any individual claimant, it cannot be held liable for negligence for a failure to carry out its statutory duties. *Braswell,* 330 N.C. at 370, 410 S.E.2d at 901. Absent a duty, there can be no liability. *Kientz,* 245 N.C. at 240, 96 S.E.2d at 17.

In *Braswell* this Court recognized two exceptions to the public duty doctrine "to prevent inevitable inequities to certain individuals." *Braswell,* 330 N.C. at 371, 410 S.E.2d at 902. It explained that exceptions to the doctrine exist: (1) where there is a special relationship between the injured party and the governmental entity; and (2) when the governmental entity creates a special duty by promising protection to an individual, the protection is not forthcoming, and the individual's reliance on the promise of protection is causally related to the injury suffered. *Id.* These exceptions are narrowly construed and

applied. *Id.* at 372, 410 S.E.2d at 902; *see also Sinning*, 119 N.C. App. at 519, 459 S.E.2d at 74.

Plaintiffs assert that defendants owed each claimant a duty under N.C.G.S. § 95-4 to inspect the Imperial Foods Products plant. This statute provides that the Commissioner of Labor is "charged with the duty" to visit and inspect "at reasonable hours, as often as practicable," all of the "factories, mercantile establishments, mills, workshops, public eating places, and commercial institutions in the State." N.C.G.S. § 95-4(5). It also imposes on the Commissioner a duty to enforce these inspection laws and request prosecution of any violations found. N.C.G.S. § 95-4(6). It creates no private cause of action for individual claimants for violations of OSHANC.

Although N.C.G.S. § 95-4 imposes a duty upon defendants, that duty is for the benefit of the public, not individual claimants as here. *Braswell*, 330 N.C. at 370, 410 S.E.2d at 901. Plaintiffs' claims thus fall within the public duty doctrine, and to state claims for actionable negligence, plaintiffs must allege facts placing the claims within one of the exceptions to the doctrine. They make no such "special relationship" or "special duty" allegations. The claims therefore must fail. *See id.* at 371, 410 S.E.2d at 902.

The dissent asserts that we have eviscerated the Tort Claims Act, nullified it, rendered it obsolete, left it purposeless, absolved the State of all liability, and barred all negligence claims against the State. These assertions are hyperbolic and overwrought. A myriad of reported and unreported cases, covering a great variety of fact situations, have allowed recovery against the State under the Tort Claims Act. Nothing in this opinion even hints at the overruling of those cases. Absent legislative change, the Act functions and will continue to function as it has for almost half a century. We simply hold, with sound reason and substantial grounding in the law of both this and other jurisdictions, that in this limited new context, not heretofore confronted by this Court, the Act was not intended to and does not apply absent a special relationship or special duty.

For the reasons stated, the Court of Appeals erred in affirming the Industrial Commission's denial of defendant's motions to dismiss. The decision of the Court of Appeals is therefore reversed, and the case is remanded to the Court of Appeals for further remand to the Industrial Commission for entry of an order of dismissal.

REVERSED AND REMANDED.

STONE v. N.C. DEPT. OF LABOR

[347 N.C. 473 (1998)]

Justice ORR dissenting.

The majority opinion erroneously takes a limited and obscure common law concept, the public duty doctrine, which has traditionally applied only to municipalities and their law enforcement responsibilities, and expands the doctrine's application to effectively eviscerate the Tort Claims Act. As a result, the right of individuals to sue the State for negligent acts committed by the State, a right expressly conveyed by the General Assembly, is nullified without the support of any precedential authority permitting such an indulgence. Therefore, I dissent for the reasons which follow.

The recognition of the public duty doctrine in this country is traced to an 1855 decision of the United States Supreme Court. *South v. Maryland*, 59 U.S. 396, 15 L. Ed. 433 (1855). The case involved a negligence suit brought by plaintiffs to recover against a sheriff and his sureties on an official bond for failure to keep the peace and protect the plaintiffs. The Court stated:

> Actions against the sheriff for a breach of his ministerial duties in the execution of process are to be found in almost every book of reports. But no instance can be found where a civil action has been sustained against him for his default or misbehavior as conservator of the peace, by those who have suffered injury to their property or persons through the violence of mobs, riots, or insurrections.

*Id.* at 403, 15 L. Ed. at 435. The Court went on to examine several earlier British decisions and concluded that because no special right was alleged, the cause of action failed.

In reviewing this seminal decision and other authorities, I can find no common law basis for the majority taking the public duty doctrine beyond the original bounds of local law enforcement. In *South*, where the doctrine first originated, the public duty doctrine was applied to address only municipalities and law enforcement. This was also the case in *Braswell v. Braswell*, 330 N.C. 363, 410 S.E.2d 897 (1991), where this Court first adopted the public duty doctrine. In *Braswell*, the doctrine was again only applied to factors involving a municipality and law enforcement. There, Justice Meyer, writing for a unanimous Court, explained:

> The general common law rule, known as the public duty doctrine, is that a municipality and its agents act for the benefit of the public, and therefore, there is no liability for the failure to furnish police protection to specific individuals.

*Id.* at 370, 410 S.E.2d at 901. Neither *South* nor *Braswell* justify the majority's sudden expansion or enlargement of the doctrine to situations beyond local law enforcement. No mention is made or reference cited by the majority which authorizes this extension, and no common law authority is offered. This judicial amplification, therefore, is not justified, and to the extent that other state jurisdictions have bent and skewed the common law to expand the doctrine, we cannot, and should not, follow such an ill-advised course.

Prior to the Tort Claims Act, the State and its agencies were immune from tort liability under the doctrine of sovereign immunity. *Gammons v. N.C. Dep't of Human Resources*, 344 N.C. 51, 54, 472 S.E.2d 722, 723-24 (1996). This common law doctrine of immunity extended protection to government entities for liability for injuries caused by government acts no matter how wanton or reckless the government's conduct. *Davis v. Messer*, 119 N.C. App. 44, 52, 457 S.E.2d 902, 907, *disc. rev. denied*, 341 N.C. 647, 462 S.E.2d 508 (1995); *Wiggins v. City of Monroe*, 73 N.C. App. 44, 49, 326 S.E.2d 39, 43 (1985). When the General Assembly enacted the Tort Claims Act in 1951, it partially waived or eliminated the State's sovereign immunity by allowing actions to be brought against the State in cases where negligence was committed by its employees in the course of their employment. *Gammons*, 344 N.C. at 54, 472 S.E.2d at 723-24. The purpose and effect of the Act was to remove the blanket immunity traditionally enjoyed by the State under the English common law and permit injured persons to recover against the State for negligent acts, *Lyon & Sons, Inc. v. N.C. State Bd. of Educ.*, 238 N.C. 24, 27, 76 S.E.2d 553, 555 (1953), or omissions, *Phillips v. N.C. Dep't of Transp.*, 80 N.C. App. 135, 341 S.E.2d 339 (1986) (1977 amendment to the Act extended State's liability to include negligent omisisons). To ensure this, the legislature made the Act expressly provide that the State is liable "under circumstances where [it], if a private person, would be liable to the claimant in accordance with the laws of North Carolina." N.C.G.S. § 143-291(a) (1996).

In the case *sub judice*, plaintiffs assert negligence claims against the State for its alleged failure to inspect the Imperial Foods Products plant. The public duty doctrine, as enunciated in *Braswell*, does not apply in this case because here: (1) the suit is against the State, not a municipality as in *Braswell*; and (2) the suit involves failure to inspect, not failure to provide police protection as in *Braswell*. Enlarging the doctrine as the majority does in this case means that it will be extended beyond its traditional realm of protecting local law

**STONE v. N.C. DEPT. OF LABOR**

[347 N.C. 473 (1998)]

enforcement and will apply to circumstances outside those identified in *Braswell*. The public duty doctrine, moreover, should not be applied here because, unlike in *Braswell*, this suit was brought under the Tort Claims Act. The public duty doctrine should not be used to *grant the State immunity* when the express intent of the Tort Claims Act was to *remove immunity* and make the State liable for its wrongs. Granting immunity to the State under the public duty doctrine makes the Tort Claims Act virtually obsolete. Thus, not only does *Braswell* not justify extending immunity, but the specific language and underlying policy of the Tort Claims Act precludes such an expansion.

The majority, however, attempts to justify its decision on the grounds that the public duty doctrine applies because: (1) The Tort Claims Act requires the State to be treated like a private person and private persons do not have public duties; (2) The Tort Claims Act incorporates the common law and therefore incorporates the public duty doctrine; (3) The *Braswell* policies support application of the doctrine; and (4) Under OSHANC, the General Assembly never intended for a duty to be imposed. All of these arguments are untenable.

First, it is patently unreasonable to interpret the Act's requirement that the State be treated like a private person as absolving the State of all liability. The very reason for this language is to eliminate the common law doctrine of sovereign immunity. The intent is to allow an individual to assert a suit against the State, the same suit an individual could assert against a private person or entity. The legislative intent of the Act was not to take this right away, especially since there was no liability to take away when this language was chosen and the Act adopted. If the language concerning treatment like a private person had been intended to mean what the majority says it means, i.e., that the State receives immunity, the Act would have no purpose. If that had been the case, the legislature could have just left sovereign immunity in place.

In addition to clashing with the intent of the Act, the majority's interpretation of this language also approves an oblique reading of the Act which necessitates a kind of acrobatic reasoning. The majority asserts that the legislative request to treat the State as a private person really means that the State has immunity. This does not make sense. The legislature did not intend to be so obtuse as to ostensibly take immunity away from the State, yet by including language requir-

ing treatment like a private person, grant it back that very same immunity under the public duty doctrine. Such reasoning would require the Court to read between the lines and discover a whole line of reasoning in the one sentence innocuously addressing treatment like a private person. If the legislature had intended to grant the State immunity by requiring that it be treated like a private person it could have simply said such.

The majority's second argument, that the Act incorporates the public duty doctrine because it incorporates the common law, is also erroneous. As previously noted, the public duty doctrine originated in the United States Supreme Court case *South v. Maryland*, 59 U.S. 396, 15 L. Ed. 433 (1855). Thereafter, "the public duty doctrine was widely accepted by most state courts." *Ezell v. Cockrell*, 902 S.W.2d 394, 397 (Tenn. 1995). When most states abolished sovereign immunity by statute, the doctrine came under attack. *Id.* at 398. Some state courts abolished the doctrine, arguing that it was simply sovereign immunity under another guise and to apply it was inconsistent with statutes that eliminated immunity. *Id.* Other states, such as Georgia, limited the application of the public duty doctrine to apply only in situations involving police protection. *Hamilton v. Cannon*, 267 Ga. 655, 482 S.E.2d 370 (1997).

In North Carolina, the common law tradition of the public duty doctrine was never extended by this Court beyond its limited application to municipalities and law enforcement. Second, the North Carolina legislature has never adopted or recognized the public duty doctrine. In fact, this Court only recognized the doctrine for the first time in 1991, and only then, the Court recognized the defense in the most narrow of terms. To argue, as the majority does, that by enacting the Tort Claims Act in 1951, the Legislature somehow incorporated the expansive public duty doctrine enunciated by the majority is at best, simply wrong.

In its third argument, the majority asserts that the *Braswell* rationale of preventing enormous liability on agencies with limited resources applies here as well. This is misplaced. First, damages are capped under the Tort Claims Act. The "General Assembly amended N.C.G.S. § 143-291(a) so that damages are capped at $150,000 for causes arising on or after 1 October 1994." *Parham v. Iredell County Dept. of Social Services*, 127 N.C. App. 144, ——, 489 S.E.2d 610, 613 (1997). Thus, the majority's fear of an "overwhelming burden of liability" has already been directly addressed by the General Assembly

which has chosen, in its legislative capacity, to limit liability as it deemed necessary.

Also, the potential for liability and circumstances in *Braswell* and in this case are very different. In *Braswell*, there was a potential for overwhelming and unlimited liability because the plaintiff was claiming that the police failed to protect her from an unpredictable criminal act. If the police could be liable for such failures, the city would endure enormous liability for all criminal acts it allegedly failed to prevent. In this case, we are dealing with inspections which are required to be carried out on a regular, predictable basis. Here, the duty to perform is clearly set out and can be accomplished. It is feasible. Also, although there may be the inclination to protect the State from suit, this case does not involve determining how "limited police resources should be allocated," as was the issue in *Braswell*. *Braswell*, 330 N.C. at 371, 410 S.E.2d at 901. Instead, this case is more similar to what we differentiated in *Braswell*, where we stated that dealing with police resources was "quite different from the predictable allocation of resources and liabilities when public hospitals, rapid transit systems, or even highways are provided." *Id.* at 371, 410 S.E.2d at 901-02. Thus, the policies articulated in *Braswell* are also inapplicable.

The fourth and final argument offered by the majority is that OSHANC did not impose a duty to conduct investigations. This is incorrect because N.C.G.S. § 95-4 provides that the Commissioner of Labor is *"charged with the duty"* to visit and inspect the factories for violations. It is unlikely that the legislature intended inspections only "as often as practicable," as the majority asserts, when it used such express language and included an extended list of requirements or actions that the Commissioner was required to take in order to fulfill this mandated duty.

It must be emphasized that the legislature, by removing sovereign immunity, made a policy decision to allow negligence suits against the state under circumstances and limitations imposed by the Tort Claims Act. Likewise, to the extent the legislature wants to limit lawsuits in the future which are similar to the one before us, it can certainly amend the Act—or abolish it altogether and reimpose sovereign immunity. It is unnecessary and inappropriate for this Court to become the protector of the legislative treasury by undoing what the representatives of the public voted to accomplish.

Finally, it should be noted that other commentators have recognized the many valid, cogent arguments which have been made

against extending the public duty doctrine to cases such as this one. As one author noted in his critique of the doctrine:

> [f]irst, the application of the doctrine allows governmental entities to use the shield of sovereign immunity when the legislature no longer mandates such immunity. Second, the application of the doctrine requires that plaintiffs injured by a negligent official suffer solely because of the governmental status of the tortfeasor. Third, the application of the doctrine promotes incompetence by providing no meaningful incentive for the governmental entity to provide the services of optimal quality. Fourth, even with the elimination of the doctrine, plaintiffs must still prove breach of duty, causation, and damages; a vigorous task just like in any other negligence action. Finally, the wide availability of liability insurance allows a governmental entity limited to pecuniary exposure while still compensating the injured individual.

Frank Swindell, *Municipal Liability for Negligent Inspections* in *Sinning v. Clark—A "Hollow" Victory for the Public Duty Doctrine*, 18 Campbell L. Rev. 241, 250-51 (1996). Moreover, other writers have noted that many "jurisdictions [have] abrogated the doctrine of sovereign immunity because of the degree of injustice it caused." John Cameron McMillan, Jr., Note, *Government Liability and the Public Duty Doctrine*, 32 Vill. L. Rev. 505, 529 (1987). By resurrecting sovereign immunity in the guise of the public duty doctrine, the majority perpetuates this injustice and disregards the mandate of the Tort Claims Act to protect injured citizens from government negligence.

Justice FRYE joins in this dissenting opinion.