***********
The Full Commission reviewed the prior Decision and Order based upon the record of the proceedings before Deputy Commissioner Rowell, the assignments of error, the briefs before the Full Commission, and the presentation of oral argument by the parties on March 17, 2010. The appealing party has shown good grounds to reconsider the evidence. Accordingly, the Full Commission reverses the Decision and Order of the Deputy Commissioner and enters the following Decision and Order.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS *Page 2 
1. All parties are properly before the court, and the court has jurisdiction of the parties and the subject matter.
2. Jerome Peters was housed at Lanesboro Correctional Institution on September 25, 2005.
3. On September 25, 2005, Officer Huntley was responsible for the distribution and collection of razors.
4. Officer Huntley put Inmate Rhakem Williams back in his cell after Inmate Williams took his shower. Inmate Williams' cell door appeared to be closed.
5. Officer Huntley then escorted Mr. Peters to the shower. Inmate Williams came out of his cell and attacked Mr. Peters from behind.
6. Officer Cecil Almond was working in the Control Room and noticed that Inmate Williams' cell door was unsecured. The door light for cell G-10 was on after he had opened the G-14 cell door (which housed Mr. Peters). Officer Almond was going to radio Officer Huntley that the door light for G-10 was still on when Officer Huntley called for help; Officer Almond told Officer Duke to go to G Block.
7. Officer Jamie Duke responded to Officer Almond's call to go to G Block. Officer Duke ran up the stairs where he saw Officer Huntley separating Mr. Peters and Inmate Williams. Officer Duke pulled his pepper spray and got Inmate Williams to go to his cell. Officer Duke noticed Peters was severely bleeding from his face and sent him back to his cell. Officer Duke noted that Williams' cell door could not be secured due to an obstruction in the door jam.
8. Nurse McInnis treated Mr. Peters in the Anson Unit sick call room. Mr. Peters had a laceration on the left side his face that measured 20 cm long x 1cm deep, from above his *Page 3 
ear to below his cheek about his jaw. Mr. Peters required 25 stitches at Anson Community Hospital as a result of being cut by Inmate Williams.
9. On September 25, 2005, Officers Huntley and Almond were employees of the North Carolina Department of Correction, and all actions taken by them pertinent to this action were in the course of said employment.
10. The parties stipulated into evidence as Stipulated Exhibit No. 1, Pre-Trial Agreement, and to include the following:
 1. Exhibit A: Incident Report
 2. Exhibit B: Witness Statements
 3. Exhibit C: Disciplinary Report for Inmate Rhakeem Williams
 4. Exhibit D: Records of Plaintiff's Medical Treatment
 5. Exhibit E: Lanesboro Correctional Standard Operating Procedures
 6. Exhibit F: Inmate Orientation for Administrative Disciplinary Segregation
 7. Exhibit G: Photograph of Plaintiff Taken On or Around April 20, 2006
 8. Exhibit H: Disciplinary Record of Inmate Rhakeem Williams
 ***********
The following item was admitted into evidence by the Deputy Commissioner as:
 EXHIBIT
1. Defendant's Exhibit #1: Disciplinary Record of Plaintiff
 ***********
Based upon all of the competent evidence of record and reasonable inferences drawn therefrom, the Full Commission makes the following: *Page 4 
 FINDINGS OF FACT
1. The Standard Operating Procedures ("SOP") governing the movement of segregation status inmates at Lanesboro Correctional on the date of the incident in question, together with established practice, required that intensive control and maximum control inmates be escorted to the assigned shower area one at a time. These inmates, among which at the time were both Plaintiff and inmate Williams, were also to be escorted to the shower area "in a minimum of handcuffs behind their back."
2. Plaintiff was housed in Intensive Control on September 25, 2005. Inmates in the Intensive Control Unit are required to never leave their cell without handcuffs and they are never in physical contact with other inmates.
3. Officer Huntley escorted inmate Rhakem Williams back to his cell after a shower and was to close the inmate's cell door, lock the door, and verify that it was secure. Officer Huntley closed the cell door, but failed to verify that the door was closed and locked. Plaintiff was then placed in handcuffs, removed from his cell, and was in the process of being taken to the shower when inmate Williams, who was no longer handcuffed, opened his cell door and proceeded to attack Plaintiff with a razor, causing the laceration to Plaintiff's face.
4. As Plaintiff was being removed from his cell, Officer Almond, working in the control room, noticed that the door light for Williams' door was on at the same time the door light for Plaintiff's door was on, indicating that both doors were open at the same time. As soon as Officer Almond identified that both doors were open at the same time, he radioed Officer Huntley to inform him, but inmate Williams' had already left his cell.
5. Once the incident was over, Officer Duke, a responding officer to the incident, noted that Williams' cell door could not be secured due to an obstruction in the door jam. *Page 5 
Officer Huntley had not identified the obstruction previously and failed to verify that the door was securely closed.
6. Plaintiff was treated immediately by a staff nurse and then transported to Anson Community Hospital where Plaintiff's laceration was measured to be approximately twenty (20) centimeters long and one (1) centimeter deep. Plaintiff's laceration required twenty-five (25) stitches to close.
7. As a result of the wound, Plaintiff has a long and obvious scar across the left side of his face.
8. The officers at Lanesboro Correctional knew or should have known that an unsecured inmate in the Intensive Control Unit poses an immediate safety threat to others.
9. This risk was foreseeable and as such, the Department of Correction ("DOC") put in place procedures to ensure that no inmates were outside of their cells without being handcuffed, and that only one cell door would be open at a time. These procedures were in place to ensure the safety and security of the officers and other inmates.
10. Officers Huntley and Almond had a duty to take reasonable precautions to safeguard Plaintiff.
11. Officer Huntley neglected to follow the DOC's Standard Operating Procedures for the movement of segregated inmates which states that no more than one cellblock door should be open at any given time.
12. Officer Almond also failed to follow DOC's Standard Operating Procedures in opening Plaintiff's door while the light showing that inmate Williams' door open was still illuminated. Officer Almond, according to DOC procedure, should have communicated with Officer Huntley before allowing Plaintiff's door to be opened. *Page 6 
13. It is not supported by the evidence, or common sense, that Plaintiff would need to notify the Officers that if the Officers fail to follow their policies the Plaintiff may be attacked. Plaintiff had no knowledge, actual or constructive, that inmate Williams intended to assault him, and thereby had no duty to warn the officers of any increased risk to Plaintiff's safety.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Under the Tort Claims Act, the General Assembly has conferred upon the Industrial Commission jurisdiction over tort claims filed "against the State Board of Education, the Board of Transportation, and all other departments, institutions and agencies of the State." N.C. Gen. Stat. § 143-291. The Act is in partial derogation of sovereign immunity, see Stone v. N.C. Dep't of Labor,347 N.C. 473, 479, 495 S.E.2d 711, 714-15 (1998), and subjects the State to liability by application of respondeat superior based upon the conduct of an identified "officer, employee, involuntary servant, or agent" of the party-defendant. See id.; see alsoWirth v. Bracey,258 N.C. 505, 507-08, 128 S.E.2d 810, 813 (1963).
2. In order to prevail in a tort claim filed pursuant to the Act, a plaintiff bears the burden of proving, as at common law: (1) that an officer, employee, involuntary servant or agent of the party-defendant owed the plaintiff a cognizable duty and (2) breached this duty, (3) proximately causing (4) injury to the plaintiff. Bolkhir v. N.C. State Univ.,321 N.C. 706, 709, 365 S.E.2d 898, 900 (1988).
3. Defendant's employees owe a duty of reasonable care to prevent reasonably foreseeable injury to inmates within its custody and control. Taylor v. N.C. Dep't of Correction,88 N.C. App. 446, 451-52, 363 S.E.2d 868, 871 (1988). *Page 7 
4. The test for what is "reasonably foreseeable" is whether "some injury would result from [the employee's] act or omission, or that consequences of a generally injurious nature might have been expected." Williamson v. Liptzin,141 N.C. App. 1, 11, 539 S.E.2d 313, 319 (2000). However, it is not sufficient that an injury be "merely possible" in order to hold a defendant liable for negligence. Id.; see alsoPhelps v. City of Winston-Salem,272 N.C. 24, 30, 157 S.E.2d 719, 723 (1967).
5. In the instant case, it was reasonably foreseeable for Defendant's employees to know that an assault upon Plaintiff would likely result from an unsecured inmate in the Intensive Control Unit on September 25, 2005. N.C. Gen. Stat. § 143-291.
6. Plaintiff has presented sufficient evidence that employees of Defendant failed to act with reasonable care. Officer Huntley made a visual observation that the cell door was secured, without verifying that the door was in fact closed and secure. Officer Almond failed to act with reasonable care by allowing another cell door to be opened when he knew or should have known there already was another cell door open. N.C. Gen. Stat. § 143-291.
7. Plaintiff is not barred from recovery due to any alleged contributory negligence. Defendant has failed to prove that Plaintiff either knew or should have known of a threat to his own safety posed specifically by inmate Williams, nor did Plaintiff breach a duty of reasonable care owed to himself by failing to inform Defendant's employees of a potential threat. N.C. Gen. Stat. § 143-291.
8. Plaintiff is entitled to all damages which proximately flow from this negligence including all physical and mental injuries and pain and suffering. Iadanza v. Harper,169 N.C. App. 776, 780, 611 S.E.2d 217, 221 (2005). Plaintiff has proved and is entitled to compensatory *Page 8 
damages for pain and suffering in the amount of $15,000.00.Iadanza, 169 N.C. App. 776, 611 S.E.2d 217 (2005).
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 ORDER
1. Plaintiff shall have and recover from Defendant and the Defendant shall pay Plaintiff the sum of FIFTEEN THOUSAND DOLLARS AND 00/100 dollars ($15,000.00) as money damages.
2. Defendant shall pay the costs.
This the 26th day of April, 2010.
 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
 S/___________________ DIANNE C. SELLERS COMMISSIONER *Page 1