***********
The Full Commission has reviewed the prior Decision and Order, based upon the record of the proceedings before Deputy Commissioner Glenn, the briefs and oral argument before the Full Commission, and the deposition of James Evans. The appealing party has shown good grounds to reconsider the evidence in this matter. Having reconsidered the evidence of record, *Page 2 
the Full Commission hereby reverses Deputy Commissioner Glenn's Decision and Order and enters the following Decision and Order:
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Tort Claims Act.
2. As of May 30, 2006, plaintiff was incarcerated as a prison inmate with the defendant Department of Correction and was housed at Caswell Correctional Institution in Yanceyville, North Carolina.
3. On the same date, another inmate at Caswell Correctional named Michael Mitchell assaulted plaintiff during a confrontation which ensued when inmate Mitchell attempted to step in front of plaintiff, who was waiting in the "canteen line."
4. Plaintiff suffered severe injury as a result of the assault, including left maxillary orbital depression and fracture, deformity of left maxillary sinus, impaired pupil response, aniscoria, tonic pupils, blurred vision, post-traumatic vertigo, shoulder pain, and headaches.
5. As of the date of the assault, the following persons were employed by defendant as correctional officers assigned to Caswell Correctional: Lieutenant McKenny, Sergeant Alma Harrison, Sergeant James Long, Officer McCollum, and Officer Carter. Each employee identified herein was acting within the course of his or her respective employment with defendant during all times relevant to the instant case. *Page 3 
6. The issues to be determined are as follows:
 a) Was plaintiff injured as a result of the negligence of defendant?
 b) If so, what amount, if any, damages should plaintiff recover from defendant as a result of defendant's negligence?
 c) Whether plaintiff's injuries were proximately caused by his own negligence?
7. The following is a list of the exhibits that were made a part of the evidence in this matter:
 a) Stipulation #1, plaintiff's medical records from defendant;
 b) Stipulation #3, Dr. Nice's medical records of plaintiff;
 c) Stipulation #4, VA hospital records for plaintiff;
 d) Stipulation #5, investigating officer's report;
 e) Stipulation #7, Caswell Correctional post orders;
 f) Stipulation #8, Caswell's standard operating procedures;
 g) Stipulation #9, DOC's administrative remedy procedure;
 h) Stipulation #10, photographs; and,
 i) Plaintiff's #6, report of earlier assault.
 ***********
The Pre-Trial Agreement along with its attachments and any additional stipulations are hereby incorporated by reference as though they were fully set out herein.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following: *Page 4 
 FINDINGS OF FACT
1. On May 30, 2006, plaintiff was housed at Caswell Correctional Institution (hereinafter "Caswell") in Yanceyville, North Carolina. Caswell has two canteens, each accessible by an outdoor window, where inmates can purchase personal items and food. When inmates are released to the yard, they run to secure a place in the canteen line as the canteens are only open for a limited time, and, therefore, inmates are sometimes turned away without the opportunity to purchase supplies. Wait times in the canteen line can range from one to four hours. Places in the canteen line are so sought after that inmates often charge a fee to purchase items for other inmates. Arguments and fights had occurred in the first shift canteen line prior to May 30, 2006.
2. During the first shift that the canteen is open, from 6:00 a.m. until 6:00 p.m., there is typically no officer stationed at either of the canteen windows. During the second shift, there was often an officer present at the canteen window. Inmates were less likely to get into fights in the canteen line during the second shift because an officer was present.
3. On May 30, 2006, plaintiff and other inmates had already been waiting in line for two hours when inmate Mike Mitchell approached the canteen area and asked who was in line. Plaintiff identified the people in the line and informed inmate Mitchell that two other inmates had secured places in the line, but had left to get water. Inmate Mitchell was displeased and indicated that he was going to cut in line in front of plaintiff. In response, plaintiff said, "Don't disrespect me like that." Inmate Mitchell became angry and cursed when other inmates told him that it was wrong to cut in line.
4. Inmate Mitchell left the area to retrieve his canteen card, and when he returned, the line had tightened up such that inmate Mitchell was unable to cut into the line. Plaintiff *Page 5 
neither directed the inmates to tighten up the line, nor did he take any action to provoke inmate Mitchell. Nevertheless, inmate Mitchell became enraged and attacked plaintiff, punching him repeatedly and slamming him against a wall, which rendered plaintiff unconscious. As plaintiff fell to the ground, another inmate caught him and inmate Mitchell continued to punch plaintiff. Plaintiff estimates that inmate Mitchell hit him between four and eight times before the other inmates demanded that he stop. Plaintiff did not fight back.
5. Following the assault, two inmates walked plaintiff to his cell and tended to his wounds. It was not until approximately thirty minutes after the assault that employees of defendant discovered that there had been an altercation and came to investigate plaintiff's involvement.
6. Plaintiff suffered a shattered orbital bone and permanent damage to his pupil. Plaintiff, who has been released from prison, continues to suffer from blurred and limited vision in his left eye, vertigo, and shoulder and neck problems. Plaintiff cannot drive and is unable to perform duties necessary for sustaining gainful employment as a result of his injuries sustained in the altercation.
7. The canteen area at Caswell was within the control of the officer assigned to the East Yard. It is that officer's primary responsibility to maintain the safety and security of the inmates and staff in his or her area of control.
8. Plaintiff did not observe a guard in the approximately ten to thirteen minutes that elapsed between the beginning of the argument with inmate Mitchell and the end of the assault. Moreover, during the two hours that plaintiff waited in the canteen line on May 30, 2006, there were no guards stationed in a position to monitor the canteen line, and plaintiff did not observe an officer patrolling the area. *Page 6 
9. Defendant's employees were aware of problems in the first shift canteen line prior to May 30, 2006. This was the result of such practices by inmates as cutting in the canteen line, selling places in the canteen line to other inmates, and purchasing items at the canteen for other inmates. The evidence shows that defendant's employee, Officer Smiley, typically made a list of inmates standing in line for the canteen which he checked to ensure that inmates had remained in the correct order, and that no inmates had cut in line.
10. Furthermore, it was not unusual for inmates to make lists of items to be purchased at the canteen for others. Because purchasing items at the canteen for others sometimes resulted in fights, officers often found and destroyed lists.
11. An assault on inmate Thomas Bash, which occurred in the first shift canteen line just over three months prior to the assault on plaintiff, serves as further evidence that defendant's employees were aware of problems in the first shift canteen line prior to May 30, 2006. Inmate Bash was severely beaten during an altercation with inmate Marc Barnes which arose when inmate Barnes took exception to inmate Bash, who was holding a place in line for another inmate who was taking a cigarette break. Inmate Barnes was severely assaulted in the altercation. Despite the fact that the assault occurred in open daylight in Caswell's East Yard, none of defendant's employees witnessed the fight or responded to the yelling and commotion. The assault had to be stopped by other inmates and defendant's employees only became aware that the assault had occurred after inmate Bash was found bleeding with a shattered eye socket in his dormitory. Following the assault on inmate Bash, defendant's employees Sergeant Fuqua, Officer Wells, and Mr. Willis investigated the incident. Defendant's employee Sergeant Harrison testified that "a report like this would typically be passed on to the other officer on other shifts just to make sure they're aware of incidents that occurred in the line." *Page 7 
12. Based upon the greater weight of the competent, credible evidence of record, the Full Commission finds that plaintiff's injuries are a direct result of the negligence of Department of Correction employees who failed to adequately supervise the first shift canteen line on May 30, 2006 and allowed inmate Mitchell to assault plaintiff, resulting in serious injuries.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Under the Tort Claims Act, the General Assembly has conferred upon the Industrial Commission jurisdiction over tort claims filed "against the State Board of Education, the Board of Transportation, and all other departments, institutions and agencies of the State." N.C. Gen. Stat. § 143-291(a) (2007). The Act is in partial derogation of sovereign immunity, see Stone v. N.C. Dep't ofLabor, 347 N.C. 473, 479, 495 S.E.2d 711, 714-15 (1998), and subjects the State to liability by application of respondeat superior based upon the conduct of an identified "officer, employee, involuntary servant, or agent" of the party-defendant. See id.; see also Wirth v. Bracey,258 N.C. 505, 507-08, 128 S.E.2d 810, 813 (1963).
2. In order to prevail in a tort claim filed pursuant to the Act, a plaintiff bears the burden of proving, as at common law: (1) that an officer, employee, involuntary servant or agent of the party-defendant owed the plaintiff a cognizable duty and (2) breached this duty, (3) proximately causing (4) injury to the plaintiff. Bolkhir v. N.C. State Univ.,321 N.C. 706, 709, 365 S.E.2d 898, 900 (1988).
3. Defendant's employees owe a duty of reasonable care to prevent reasonably foreseeable injury to inmates within its custody and control. Taylor v. N.C. Dep't of Correction, *Page 8 88 N.C. App. 446, 451-52, 363 S.E.2d 868, 871 (1988). Nevertheless, defendant is not the insurer of an inmate's safety and will not be held liable every time an inmate suffers injury. Id.
4. With respect to defendant's employees' duty of reasonable care in the instant case, the evidence shows that the canteen area at Caswell was within the control of the officer assigned to the East Yard, and that it was that officer's primary responsibility to maintain the safety and security of the inmates and staff in his or her area of control. Defendant breached this duty of exercising reasonable care to protect plaintiff from harm by failing to take reasonable steps, such as posting a guard at the canteen window, a measure employed during the second shift which made fights during that shift less likely.
5. The test for what is "reasonably foreseeable" is whether "some injury would result from [the employee's] act or omission, or that consequences of a generally injurious nature might have been expected." Williamson v. Liptzin,141 N.C. App. 1, 11, 539 S.E.2d 313, 319 (2000). However, it is not sufficient that an injury be "merely possible" in order to hold a defendant liable for negligence. Id.; see also Phelps v. Cityof Winston-Salem, 272 N.C. 24, 30, 157 S.E.2d 719, 723 (1967).
6. In the instant case, the evidence shows that defendant's employees were aware of prior altercations in the first shift canteen line, including the altercation in which inmate Bash was severely assaulted just over three months before the assault involving plaintiff. The evidence also shows that defendant's employees were aware that the practices among inmates of cutting in the canteen line, selling places in the canteen line to other inmates, and purchasing items at the canteen for other caused problems, and that some officers took steps to prevent these problems such as documenting the order of inmates standing in line, and confiscating and destroying lists of items to be purchased for other inmates. In light of the foregoing, defendant's *Page 9 
employers should have reasonably foreseen the potential for future fights to occur in the first shift canteen line.
7. Defendant's employees' breach of duty proximately caused plaintiff injury and damages, for which he is due reasonable compensation when he was beaten by inmate Mitchell. SeeBolkhir v. N.C. State Univ.,321 N.C. 706, 709, 365 S.E.2d 898, 900 (1988).
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 ORDER
1. It is hereby ordered that the case is remanded to Chief Deputy Commissioner Wanda Blanche Taylor for the assignment of this matter to a Deputy Commissioner for the sole purpose of taking testimony on the issue of damages.
2. Defendant shall pay the costs of this action.
This the 14th day of January, 2011.
 S/___________________ LINDA CHEATHAM COMMISSIONER
CONCURRING:
 S/___________________ DANNY LEE McDONALD COMMISSIONER *Page 10 
 S/___________________ STACI T. MEYER COMMISSIONER *Page 1