ANITA FAYE ISENHOUR, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF ANTHONY DARRELL ISENHOUR, JR., DECEASED, PLAINTIFFS v. KIMBERLY ANN HUTTO, DONALD STEPHEN HUTTO, ROBBIE FAYE MORRISON, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS A SCHOOL CROSSING GUARD, AND THE CITY OF CHARLOTTE, A NORTH CAROLINA MUNICIPAL CORPORATION, DEFENDANTS

No. COA97-756

(Filed 2 June 1998)

**1. Municipal Corporations § 450 (NCI4th)— public duty doctrine—inapplicability to school crossing guard**

The public duty doctrine does not shield a city from liability for the alleged negligence of a school crossing guard that caused the death of a child because the crossing guard's primary function is to ensure the safety of specific individuals—children crossing the street—rather than the public at large.

**2. Public Officers and Employees § 35 (NCI4th)— complaint—claim against defendant in individual capacity**

Plaintiffs' complaint stated a claim against defendant school crossing guard in her individual capacity for negligently directing a child across the street where the complaint sought monetary damages against the crossing guard.

**3. Public Officers and Employees § 35 (NCI4th)— school crossing guard—individual capacity—not liable for ordinary negligence**

A school crossing guard is a public official rather than a public employee; therefore, a crossing guard was not susceptible to suit in her individual capacity for an ordinary act of negligence.

Appeal by defendants City of Charlotte and Robbie Faye Morrison from order entered 8 April 1997 by the Honorable John M. Gardner in Mecklenburg County Superior Court. Heard in the Court of Appeals 18 February 1998.

*Dean & Gibson, by Rodney A. Dean and D. Christopher Osborn, for defendants-appellants.*

*Bailey, Patterson, Caddell, Hart & Bailey, P.A., by Michael A. Bailey, for plaintiffs-appellees.*

WYNN, Judge.

Under the "public duty doctrine," state and municipal governmental entities are deemed to act for the general public and thus have no tort duty to protect individuals from harm by third parties. *See Braswell v. Braswell,* 330 N.C. 363, 370-71, 410 S.E.2d 897, 901 (1991), *reh'g denied,* 330 N.C. 854, 413 S.E.2d 550 (1992). In this case, the City of Charlotte asserts that the public duty doctrine shields it from any liability for the alleged negligence of a school crossing guard that caused the death of a child. Because we find that a crossing guard's primary function is to ensure the safety of specific individuals—children crossing the street—rather than the public at large, we uphold the trial court's determination that the public duty doctrine does not shield the City of Charlotte from liability.

On 8 October 1991, Anthony Darrell Isenhour, Jr., a minor, walked home from elementary school. As he crossed a Charlotte street under the direction of a crossing guard, a driver struck him with her vehicle. Initially severely injured, Anthony later died as a result of the accident.

Anthony's mother, Anita Faye Isenhour, first brought a negligence action but later amended it to a wrongful death action against the driver and her husband. She also sued the crossing guard and her employer, the City of Charlotte.

The crossing guard and Charlotte responded to the complaint by moving to dismiss it under Rule 12(b)(6) for failure to state a claim.

Following a denial of those motions, the crossing guard and Charlotte appealed to this Court.

## I.

When ruling on a Rule 12(b)(6) motion, the standard of review is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory." *Harris v. NCNB*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). In ruling upon such a motion, the complaint is to be liberally construed, and the court should not dismiss the complaint "unless it appears beyond doubt that [the] plaintiff could prove no set of facts in support of his claim which would entitle him to relief." *Dixon v. Stuart*, 85 N.C. App. 338, 340, 354 S.E.2d 757, 758 (1987).

**[1]** Ms. Isenhour asserted numerous negligent acts and omissions on the part of the City of Charlotte and the crossing guard that caused her son's injuries and subsequent death. On appeal, the City of Charlotte and the crossing guard argue that Ms. Isenhour failed to state a claim against them because they are shielded from liability by the public duty doctrine.

In essence, the public duty doctrine operates to defeat a negligence claim by establishing the lack of the "duty" element. *Davis v. Messer*, 119 N.C. App. 44, 55, 457 S.E.2d 902, 909 (1995), *disc. review denied*, 341 N.C. 647, 462 S.E.2d 508 (1995). An action for negligence requires "the existence of a legal relationship between the parties by which the injured party is owed a duty which either arises out of a contract or by operation of law." *Vickery v. Construction Co.*, 47 N.C. App. 98, 103, 266 S.E.2d 711, 715, *disc. review denied*, 301 N.C. 106, —— S.E.2d —— (1980). If there is no duty, there can be no liability. *Coleman v. Cooper*, 89 N.C. App. 188, 192, 366 S.E.2d 2, 5, *disc. review denied*, 322 N.C. 834, 371 S.E.2d 275 (1988). Under the public duty doctrine, when exercising its statutory police powers a municipality and its agents cannot be held liable for a failure to carry out its statutory duties to an individual. *Braswell v. Braswell*, 330 N.C. 363, 410 S.E.2d 897 (1991), *reh'g denied*, 330 N.C. 854, 413 S.E.2d 550 (1992); *see also Stone v. N.C. Dept. of Labor*, 347 N.C. 473, 482, 495 S.E.2d 711, 717 (1998) ("governmental entities, when exercising their statutory powers, act for the benefit of the general public and . . . have no duty to protect specific individuals.")

Relatively recently, our Supreme Court expressly adopted the public duty doctrine in the case of *Braswell v. Braswell*, 330 N.C. 363,

410 S.E.2d 897. In that case, the Court considered a negligence claim brought by the administrator of Lillie Stancil Braswell's estate against Ralph L. Tyson, the Sheriff of Pitt County. *Id.* at 366, 410 S.E.2d at 899. Billy R. Braswell, Lillie's estranged husband and a Pitt County deputy sheriff, murdered her. *Id.* The plaintiff, Lillie and Billy's son, sued Sheriff Tyson for negligent failure to protect and for negligent supervision and retention of Billy. *Id.* at 366-67, 410 S.E.2d at 899. At the close of plaintiff's evidence, the trial court directed verdict in favor of Sheriff Tyson. *Id.* at 367, 410 S.E.2d at 899. The plaintiff appealed to this Court, and we found no error in the dismissal of the negligent supervision and hiring claim, but reversed on the dismissal of the claim for negligent failure to protect. *Id.*

In reversing the Court of Appeals on the issue involving the claim for negligent failure to protect, the Supreme Court held that the public duty doctrine protected the defendant Sheriff from liability. *Id.* at 370-72, 410 S.E.2d at 901-02. The Court noted that "[t]he general common law rule, known as the public duty doctrine, is that a municipality and its agents act for the benefit of the public, and therefore, there is no liability for the failure to furnish police protection to specific individuals. This rule recognizes the limited resources of law enforcement and refuses to judicially impose an overwhelming burden of liability for failure to prevent every criminal act." *Id.* at 370-71, 410 S.E.2d at 901 (citation omitted).

The language used in the holding of *Braswell* was specific to the facts before the Court—a law enforcement officer sued for failing to protect a member of the public from harm. *See id.* at 370-71, 410 S.E.2d at 901. After *Braswell*, several opinions of this Court recognized the applicability of the public duty doctrine for non-police defendants. *See Stone v. N.C. Dept. of Labor*, 347 N.C. 473, 480-81, 495 S.E.2d 711, 715-16 (1998) (listing cases). However, it was not until the recent case of *Stone v. N.C. Dept. of Labor* that our Supreme Court recognized the applicability of the public duty doctrine to non-law enforcement defendants. *See id.* at 481, 495 S.E.2d at 716 ("While this Court has not heretofore applied the doctrine to a state agency or to a governmental function other than law enforcement, we do so now.")

In *Stone*, the plaintiffs sued the North Carolina Department of Labor and its Occupational Safety and Health Division under the Tort Claims Act. The plaintiffs asserted a negligence claim, alleging that defendants had, *inter alia*, negligently failed to inspect the Imperial Foods Products Plant in Hamlet, North Carolina.

The Supreme Court held that the public duty doctrine barred such a claim.

> The general common law rule provides that governmental entities, when exercising their statutory powers, act for the benefit of the general public and therefore have no duty to protect specific individuals. Because the governmental entity owes no particular duty to any individual claimant, it cannot be held liable for negligence for a failure to carry out its statutory duties. Absent a duty, there can be no liability.

*Id.* at 482, 495 S.E.2d at 716 (citations omitted). Again, the theory behind the application of the doctrine was concern about "impos[ing] an overwhelming burden of liability on defendants for failure to prevent every employer's negligence that results in injuries or deaths to employees," as " '[i]t is better to have . . . laws [for public protection], even haphazardly enforced, than not to have them at all.' " *Id.* at 481, 495 S.E.2d at 716 (quoting *Grogan v. Commonwealth,* 577 S.W.2d 4, 6 (Ky.), *cert. denied,* 444 U.S. 835, 62 L. Ed. 2d 46 (1979)).

Returning to the case before us, we do not agree that the public duty doctrine nullifies a negligence suit against a crossing guard alleged to have negligently performed his or her duties. "Whether there is a duty owed by one person to another to use care . . . depends upon the relationship of the parties one to the other." *Insurance Co. v. Sprinkler Co.,* 266 N.C. 134, 140-41, 146 S.E.2d 53, 60 (1966) (citation omitted). The public duty doctrine theorizes that "a municipality and its agents act for the benefit of the public, and therefore, there is no liability . . . to specific individuals." *Braswell,* 330 N.C. at 370, 410 S.E.2d at 901.

Here, the relevant relationship was one between a crossing guard and an elementary school student. Unlike police and governmental agencies, who serve the public at large, a crossing guard's primary function is to ensure the safety of a specific individual—each child who comes to the crossing guard seeking to cross the street. Thus, the theoretical argument for the public duty doctrine has no applicability to the facts of the present case.

Furthermore, the facts of this case are distinguishable from the holdings of *Stone* and *Braswell.* Ms. Isenhour alleged that the crossing guard negligently *acted* in assisting her son in crossing the street. In contrast, the governmental entity in *Stone* negligently *failed* to carry out its statutory duties. Likewise, in *Braswell* the defendant

was a law enforcement officer, and the suit was for negligently *failing* to provide law enforcement protection.

Moreover, the public policy justification for the public duty doctrine is inapplicable to the present case. As stated by our Supreme Court, the public duty doctrine "recognizes the limited resources of law enforcement and refuses to judicially impose an overwhelming burden of liability for failure to prevent every criminal act." *Braswell*, 330 N.C. at 370-71, 410 S.E.2d at 901. Similarly, in *Stone*: "we . . . refuse to judicially impose an overwhelming burden of liability on defendants for failure to prevent every employer's negligence that results in injuries or deaths to employees." *Id.* at 481, 495 S.E.2d at 716. Here, the imposition of liability on crossing guards implicates no such threat of overwhelming liability, given the limited range of services provided by them and the relatively smaller segment of the population served.

Perhaps the most compelling reason for concluding that the public duty doctrine does not apply to this case comes from *Stone*. Responding to a dissent, the Court said: "A myriad of reported and unreported cases, covering a great variety of fact situations, have allowed recovery against the State under the Tort Claims Act. *Nothing in this opinion even hints at the overruling of those cases.* Absent legislative change, the Act functions and will continue to function as it has for almost half a century. We simply hold . . . that in this limited new context, not heretofore confronted by this Court, the Act was not intended to and does not apply absent a special relationship or special duty." *Id.* at 483, 495 S.E.2d at 717 (emphasis added).

We can discern no reason why the doctrine's application should be differentiated based on whether the defendant is a state or municipal tortfeasor. Thus, we will apply the *Stone* Court's understanding to the present case involving a municipality. It appears to be well-established that, under the Tort Claims Act, recovery may be had for injuries resulting from negligent action but not for negligent omissions; however, an undertaking negligently implemented is an actionable negligent action. *Mackey v. Highway Comm.*, 4 N.C. App. 630, 633, 167 S.E.2d 524, 526 (1969). The present case falls squarely into the category of action undertaken and, treating Ms. Isenhour's allegations as true, negligently performed. Therefore, we conclude that this recognized basis of liability was not nullified by the Supreme Court's adoption of the public duty doctrine.

Accordingly, we hold that the public duty doctrine does not apply to the situation of a crossing guard sued for negligently directing a child across the street; we therefore hold that the trial court did not err by declining to dismiss this action. Given this conclusion, we do not need to consider whether an exception to the public duty doctrine applies.

## II.

Lastly, the crossing guard contends that the trial court erred by denying her motion to dismiss the claim against her in her individual capacity, and abused its discretion by allowing amendment of the complaint to include a designation in the caption that the suit was against her in her individual capacity.

[2] The crossing guard first argues that the language and "overall tenor" of the complaint was for a suit against her in her official capacity. We disagree. "The crucial question for determining whether a defendant is sued in an individual or official capacity is the nature of the relief sought, not the nature of the act or omission alleged." Anita R. Brown-Graham & Jeffrey S. Koeze, *Immunity from Personal Liability under State Law for Public Officials and Employees: An Update*, Loc. Gov't L. Bull. 67, at 7 (Inst. of Gov't, Univ. of N.C. at Chapel Hill), Apr. 1995, *quoted in Meyer v. Walls*, 347 N.C. 97, 110, 489 S.E.2d 880, 887 (1997).

Here, the complaint sought monetary damages. "If money damages are sought, the court must ascertain whether the complaint indicates that the damages are sought from the government or from the pocket of the individual defendant. . . . if the latter, it is an individual-capacity claim . . . ." *Id.* In this case, the complaint specifically sought relief from Morrison in her individual capacity. Accordingly, we can find no merit in the crossing guard's contention that the complaint did not state a claim against her in her individual capacity.

We now turn to the question of whether the crossing guard could be sued in her individual capacity. "It is settled law in this jurisdiction that a public official, engaged in the performance of governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto." *Smith v. Hefner*, 235 N.C. 1, 7, 68 S.E.2d 783, 787 (1952), *quoted in Meyer v. Walls*, 347 N.C. at 112, 489 S.E.2d at 888. However, a public employee may be held individually liable. *Meyer*, 347 N.C. at 112, 489 S.E.2d at 888.

**ISENHOUR v. HUTTO**

[129 N.C. App. 596 (1998)]

When differentiating between a public officer and a public employee, several distinctions are relevant: (1) public officer's positions are created by the constitution or statutes of the sovereign; (2) the duties of a public officer involve the exercise of sovereign power; (3) public officers have some degree of discretion—discretionary acts being those requiring personal deliberation, decision, and judgment—whereas public employees perform ministerial functions—the execution of a specific duty arising from fixed and designated facts. *See id.* at 113-14, 489 S.E.2d at 889.

[3] Under this analysis, the crossing guard is analogous to a police officer, in that both are charged with the public safety and with ensuring that public laws are obeyed, albeit the crossing guard has a lesser degree of responsibility and power. Further, it is common knowledge that police officers are often called upon to direct traffic. We can discern no reason to distinguish between a crossing guard and a police officer in this situation. As a police officer is a public official, *see Shuping v. Barber*, 89 N.C. App. 242, 248, 365 S.E.2d 712, 716 (1988), we believe a crossing guard should be so treated. Accordingly, we hold that the crossing guard was not susceptible to suit in her individual capacity for ordinary acts of negligence; as the complaint alleges no greater culpability than that, the trial court erred by not dismissing the suit against her in her individual capacity. The suit against her in her official capacity, of course, is not affected by this holding.

To summarize, we affirm the trial court's denial of the motion to dismiss based on the public duty doctrine, but on the plaintiffs' claim against the crossing guard in her individual capacity we reverse and remand for an order dismissing the claim.

Affirmed in part, reversed in part.

Judges JOHN and McGEE concur.