SHARON LYNN LOVELACE, Administratrix of the Estate of SHAYLA MEAGEN MOORE, and SHARON LYNN LOVELACE, Individually, Plaintiffs v. CITY OF SHELBY and THOMAS LOWELL LEE, Defendants

No. COA98-1015

(Filed 1 June 1999)

**1. Appeal and Error— appealability—motion to dismiss denied—public duty doctrine**

The City's appeal from the denial of a motion to dismiss was interlocutory but was heard because it was grounded on the defense of governmental immunity through the public duty doctrine.

**2. Governmental Immunity— public duty doctrine—911 call— no individual relationship**

The trial court erred by denying defendant-City's motion to dismiss a negligence action arising from a slow response to a 911 call reporting a fire where plaintiffs alleged that by receiving the 911 call the City acknowledged that fire protection or other appropriate emergency response would be forthcoming. No individual relationship existed between the dispatcher and the plain-

tiffs which increased their risk; to hold otherwise would impute a "special duty" in every case where a 911 call is received.

### 3. Telecommunications— Public Safety Telephone Act—no private cause of action

The Public Safety Telephone Act, N.C.G.S. § 62A-2, contains no provision for a private cause of action and any violation by a slow 911 response does not create an exception to the public duty doctrine for purposes of governmental immunity to a negligence action.

Judge WYNN dissenting

Appeal by defendant City of Shelby from an order entered 12 March 1998 by Judge Ronald K. Payne in Cleveland County Superior Court. Heard in the Court of Appeals 1 April 1999.

*Deaton & Biggers, P.L.L.C., by W. Robinson Deaton, Jr. and Lydia A. Hoza; and Hamrick, Mauney, Flowers, Martin & Moore, by Fred A. Flowers, for plaintiffs-appellees.*

*Stott, Hollowell, Palmer & Windham, LLP, by Martha Raymond Thompson, for defendant-appellant City of Shelby.*

WALKER, Judge.

Plaintiff Sharon Lynn Lovelace, individually and in her capacity as administratrix of the estate of her daughter, Shayla Meagen Moore, filed this action on 5 November 1997. Plaintiffs alleged that the defendant City of Shelby (City) was negligent in the dispatch of fire-fighting personnel to plaintiffs' home resulting in the death of Shayla. Plaintiffs also made claims against defendant Thomas Lowell Lee, the owner of the house; however, he is not a party to this appeal. The allegations in plaintiffs' amended complaint relating to the claims against the City may be summarized as follows: Plaintiff and her children, including Shayla, resided at 706 Calvary Street within the corporate limits of the City. A fire was discovered inside their home, and plaintiff and two of her children exited the home, but Shayla did not. At the request of plaintiff, two or more persons contacted the City's police department by calling the 911 emergency number. Helen Earley, the 911 system operator, answered the calls and informed the callers that emergency response was forthcoming; however, she delayed six minutes before notifying the fire department. The fire department arrived approximately ten minutes after the calls were

made even though the station was approximately 1.1 miles from the burning home.

Also included in plaintiff's amended complaint were allegations that the actions of the City had created a "special duty" or "special relationship" between the City and plaintiff:

10. The City of Shelby, by and through its protective officers, agents and employees, created a special duty to the plaintiff and the plaintiff's decedent by acknowledging or promising protection to the plaintiff and the plaintiff's decedent, by answering the 911 calls alleged herein and by further acknowledging that, in effect, fire protection service or other appropriate emergency response would be forthcoming. The plaintiff and the plaintiff's decedent relied on the promise of protection.

11. The defendant City of Shelby, by and through its servants and agents as alleged hereinbefore, undertook to furnish protection to specific individuals, to wit, the plaintiff and the plaintiff's decedent.

. . .

21. As alleged hereinbefore, a special relationship was formed between the plaintiff, the plaintiff's decedent and the City of Shelby, in that the 911 operator acknowledged and accepted a responsibility of dispatching the appropriate fire protection or other protection services to the scene of the fire at plaintiff's home.

22. The defendant City of Shelby, by and through the acts of its agents and servants, breached its promise of protection to the plaintiff and the plaintiff's decedent, and breached its promise of providing emergency protection to the plaintiff and the plaintiff's decedent.

23. The plaintiff and the plaintiff's decedent relied on this promise of protection, and their reliance on this protection which was not forthcoming, was causally related to the injuries and death sustained by the plaintiff's decedent.

24. The breach of this special duty and breach of agreement regarding this special relationship between the plaintiff, the plaintiff's decedent and the defendant City of Shelby was a direct and proximate cause of the injuries and death suffered by the plaintiff's decedent.

The City filed a motion to dismiss pursuant to N.C.R. Civ. P. 12(b)(6) which was denied by the trial court.

[1] First, we note plaintiff has moved to dismiss the City's appeal as interlocutory. In this case, the trial court's order "does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381, *reh'g denied*, 232 N.C. 744, 59 S.E.2d 429 (1950). Thus, the appeal is interlocutory. However, the appeal may be heard "if the trial court's decision deprives the appellant of a substantial right which would be lost absent immediate review." *Bartlett v. Jacobs*, 124 N.C. App. 521, 524, 477 S.E.2d 693, 695 (1996), *disc. review denied*, 345 N.C. 340, 483 S.E.2d 161 (1997) (citations omitted); *see* N.C. Gen. Stat. § 1-277 (1996). Our courts have held that orders denying motions to dismiss grounded on the defense of governmental immunity through the public duty doctrine affect a substantial right and are immediately appealable. *Hedrick v. Rains*, 121 N.C. App. 466, 466 S.E.2d 281, *affirmed*, 344 N.C. 729, 477 S.E.2d 171 (1996); *Clark v. Red Bird Cab Co.*, 114 N.C. App. 400, 442 S.E.2d 75, *disc. review denied*, 336 N.C. 603, 447 S.E.2d 387 (1994). Therefore, plaintiff's motion to dismiss the City's appeal is denied.

[2] The City contends on appeal that the trial court erred in denying its motion to dismiss the complaint for failure to state a claim upon which relief could be granted. The City argues that the public duty doctrine insulates it from liability in this instance and that the plaintiff has failed to plead any exceptions to the doctrine.

A motion to dismiss pursuant to Rule 12(b)(6) "tests the legal sufficiency of the pleading against which it is directed." *Derwort v. Polk County*, 129 N.C. App. 789, 791, 501 S.E.2d 379, 380 (1998). The motion should be allowed when the factual allegations fail as a matter of law to state the elements of a legally recognizable claim. *Id.* at 791, 501 S.E.2d at 381. An action for negligence is predicated on the existence of a legal duty owed by the defendant to the plaintiff. *Lynn v. Overlook Development*, 98 N.C. App. 75, 389 S.E.2d 609 (1990), *affirmed in part and reversed in part*, 328 N.C. 689, 403 S.E.2d 469 (1991). Therefore, a pleading asserting a claim sounding in negligence must assert a duty on the part of the defendant to the plaintiff.

The public duty doctrine is a common law rule first recognized by our Supreme Court in *Braswell v. Braswell*, 330 N.C. 363, 410 S.E.2d 897 (1991), *rehearing denied*, 330 N.C. 854, 413 S.E.2d 550 (1992). The rule holds that "a municipality and its agents act for the benefit

of the public, and therefore, there is no liability for the failure to furnish police protection to specific individuals." *Id.* at 370, 410 S.E.2d at 901. *Braswell* recognized the doctrine in the context of police protection. Since that holding, our appellate courts have expanded the doctrine to include many government services or responsibilities. *See, e.g., Stone v. N.C. Dept. of Labor,* 347 N.C. 473, 495 S.E.2d 711, *rehearing denied,* 348 N.C. 79, 502 S.E.2d 836, *cert. denied,* —— U.S. ——, 142 L. Ed. 2d 449 (1998) (workplace safety inspections); *Clark,* 114 N.C. App. 400, 442 S.E.2d 75 (investigation of taxicab driver license application); *Prevette v. Forsyth County,* 110 N.C. App. 754, 431 S.E.2d 216, *disc. review denied,* 334 N.C. 622, 435 S.E.2d 338 (1993) (animal control); *Hunt v. N.C. Dept. of Labor,* 348 N.C. 192, 499 S.E.2d 747 (1998) (amusement ride safety inspection); *Davis v. Messer,* 119 N.C. App. 44, 457 S.E.2d 902, *disc. review denied,* 341 N.C. 647, 462 S.E.2d 508 (1995) (fire protection); *Sinning v. Clark,* 119 N.C. App. 515, 459 S.E.2d 71, *disc. review denied,* 342 N.C. 194, 463 S.E.2d 242 (1995) and *Simmons v. City of Hickory,* 126 N.C. App. 821, 487 S.E.2d 583 (1997) (building inspections).

Exceptions to the public duty doctrine arise where some form of "special duty" exists between the parties. *Vanasek v. Duke Power Co.,* 132 N.C. App. 335, 511 S.E.2d 41 (1999). A "special duty" exception exists where the municipality "promis[es] protection to an individual, the protection is not forthcoming, and the individual's reliance on the promise of protection is causally related to the injury suffered." *Id. (quoting Davis,* 119 N.C. App. at 56, 457 S.E.2d at 909). Often mentioned as a separate exception, but actually a subset of the "special duty" exception, is the "special relationship" such as the relation between law enforcement officers and a state's witness or informant wherein the officers give special protection to the witness or informant because of the information or testimony that will be given and the accompanying greater risk undertaken. *Hunt,* 348 N.C. at 199, 499 S.E.2d at 751. This relationship is formed by "representations or conduct by the police which cause the victim(s) to detrimentally rely on the police such that the risk of harm as the result of police negligence is something more than that to which the victim was already exposed." *Hull v. Oldham,* 104 N.C. App. 29, 38, 407 S.E.2d 611, 616, *disc. review denied,* 330 N.C. 441, 412 S.E.2d 72 (1991). In order to survive the application of the public duty doctrine, the plaintiff's allegations must fit within an exception to the doctrine. Thus, to properly set forth the "special duty" exception, the complaint must allege an "overt promise" of protection by defendant, detrimental reliance on the promise, and a causal relation between

the injury and the reliance. *Derwort*, 129 N.C. App. at 793-94, 501 S.E.2d at 382.

In this case, plaintiffs allege that the "special duty" was created "by answering the 911 calls alleged herein and by further acknowledging that, in effect, fire protection service or other appropriate emergency response would be forthcoming." Plaintiffs cite *Davis*, 119 N.C. App. 44, 457 S.E.2d 902, as authority that supports these allegations. In *Davis*, the allegations of a "special duty" were found to be sufficient where a firefighter informed a dispatcher that his fire department would respond even though the burning home was near the border with an adjacent fire district. *Id.* The fire trucks turned around within a mile of the house and returned to their station when they observed that the burning home was across the district line. *Id.* The homeowner relied on that direct promise of protection and did not call other fire departments. *Id.* This Court held that the plaintiff's allegations stated enough to satisfy the substantive elements of the exception to the public duty doctrine.

Here, the plaintiffs alleged that by receiving the 911 call, the City acknowledged that "fire protection service or other appropriate emergency response would be forthcoming." However, there are no allegations of any other promise by the City creating a "special duty." To hold otherwise would impute a "special duty" in every case where a 911 call is received.

A "special relationship" cannot be established by the facts alleged. The relationship between the 911 operator and the plaintiffs is not comparable to the relationship between a law enforcement officer and a state's witness or informant. *See Hunt*, 348 N.C. at 199, 499 S.E.2d at 751. Further, the relationship did not place the plaintiffs in a position of risk which was "something more than that to which the victim was already exposed." *Hull*, 104 N.C. App. at 38, 407 S.E.2d at 616. Plaintiff cites *Isenhour v. Hutto*, 129 N.C. App. 596, 501 S.E.2d 78, *disc. review allowed*, 349 N.C. 360, 517 S.E.2d 896 (1998) as authority that a "special relationship" existed. In *Isenhour*, this Court held that a "special relationship" existed between a school crossing guard and a child who was hit by a car after the crossing guard had allowed the child to cross the street. The plaintiffs' allegations were sufficient to establish a duty on the part of the crossing guard to each child who crossed the street. *Id.* In this case, no individual relationship existed between the dispatcher and the plaintiffs which increased their risk.

**[3]** Plaintiff also alleges that the City's employee, Helen Earley, violated N.C. Gen. Stat. § 62A-2, the Public Safety Telephone Act, by delaying her notification of the fire department and that her violation constitutes negligence *per se*. Plaintiff argues negligence *per se* as an additional justification for the trial court's order denying the City's motion to dismiss. Without determining whether N.C. Gen. Stat. § 62A-2 is a safety statute creating any duty, we note that violation of a statutory duty does not create a "special duty" between parties unless the statute also creates a private cause of action. *Vanasek*, 132 N.C. App. at 338-39, 511 S.E.2d at 44. N.C. Gen. Stat. § 62A-2 sets out the legislative purpose for the Public Safety Telephone Act and contains no provision for a private cause of action. *See* N.C. Gen. Stat. § 62A-2 (1997). Thus, any alleged violation does not create an exception to the public duty doctrine.

For the reasons stated herein, we reverse the order of the trial court and remand for entry of an order allowing the City's motion to dismiss.

Reversed and remanded.

Judge HUNTER concurs.

Judge WYNN dissents.

Judge WYNN dissenting.

Although I agree with the conclusion reached by the majority, I must dissent because the case *sub judice* is indistinguishable from our prior holding in *Davis v. Messer*, 119 N.C. App. 44, 457 S.E.2d 902 (1995). The plaintiffs in this matter, like the plaintiff in *Davis*, have alleged facts sufficient to establish a *prima facie* case of negligence as well as sufficient facts to demonstrate that their case falls within the "special duty" exception to the public duty doctrine. Therefore, I am obliged to follow the precedent set forth in *Davis* and find that the plaintiffs have alleged sufficient facts to warrant reversal of the trial court's granting of the defendants' Rule 12(b)(6) motion.

Additionally, I believe that our Supreme Court should reexamine the vitality of the public duty doctrine adopted in *Braswell v. Braswell*, 330 N.C. 363, 410 S.E.2d 897 (1991). Since the pronouncement of that decision, our courts have struggled to pigeonhole individual cases into specific, narrow exceptions to reach justifiable

results. Indeed, the majority opinion cites numerous examples of such cases. A more appropriate solution may be a return to our time-tested prior law which allowed for recovery in cases where the plaintiff can present evidence of gross or reckless negligence. That approach adequately balanced the state's ability to protect governmental entities from the floodgates of litigation while at the same time protecting its citizens from blatantly unlawful conduct. Moreover, this approach would simplify this area of jurisprudence so that our citizens can better understand this arena of our common law.