***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence, affirms in part, and reverses in part, the Decision and Order of the Deputy Commissioner.
 ***********
The following documents were proffered into evidence as:
 EXHIBITS 1. Plaintiff's Exhibit A: Map of dorm by plaintiff
 2. Plaintiff's Exhibit B: I.C. filing
 3. Plaintiff's Exhibit C: Investigative Reports
 4. Plaintiff's Exhibit D: Charges Infractions
 5. Plaintiff's Exhibit E: Plaintiff's Infraction History *Page 2 
 6. Plaintiff's Exhibit F: Grievance
 7. Plaintiff's Exhibit G: Tort Claim
 8. Plaintiff's Exhibit H: Grievance
 9. Plaintiff's Exhibit I: Medical Request
 10. Plaintiff's Exhibit J: Medical records
 11. Plaintiff's Exhibit K: Medical records
 12. Plaintiff's Exhibit L: Medical records
 13. Plaintiff's Exhibit M: Correspondence
 14. Plaintiff's Exhibit N: Rules and policy
 15. Defendant's Exhibit #1: Plaintiff's Disciplinary Reports
 ***********
Based upon the competent evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. In this state tort claims action, plaintiff alleges that employees or agents of defendant committed acts of negligence in allowing him to be assaulted by another inmate and thereafter denying him access to medical care.
2. On 9 October 2006, plaintiff was an inmate housed at Lincoln Correctional Institution. Plaintiff was in his dormitory watching a football game when he was approached by another inmate.
3. Plaintiff later admitted to participating in the organization and running of a gambling enterprise. It appears that the other inmate, Bryant Moses, was dissatisfied with some aspect of the gambling enterprise and he and plaintiff got into a fight. *Page 3 
4. The fight culminated with plaintiff having his head driven into his bed frame, causing cuts to plaintiff's face above his eye and breaking his nose.
5. Plaintiff attended to his wounds himself, and subsequently made some efforts to disguise his wounds from the guards by wearing sunglasses and a toboggan cap.
6. On 13 October 2006, Superintendent John Crow was notified of the fight and investigated. Ultimately, plaintiff was charged with "Mutual Physical Confrontation" and "Gambling." Plaintiff pled guilty to both charges.
7. On 15 October 2006, plaintiff was placed in segregation as a result of pleading guilty to the charges of gambling and fighting. He did not receive any medical attention, despite having visible wounds.
8. Plaintiff remained in segregation until 24 October 2006, when he was transferred to Avery Mitchell Correctional Institution.
9. Upon his arrival at Avery Mitchell Correctional Institution, plaintiff was given a medical screening. The notes from that screening indicate a laceration to the right brow and outer area of right eye, all healed. It is noted that there was no redness, edema or open area, but there was scarring above the right eye.
10. Plaintiff continued to experience nasal problems for which he continued to receive medical treatment and on 10 May 2007, he was taken to Salisbury Ear, Nose and Throat for an examination. The medical notes indicate that plaintiff's nasal pyramid had been deviated since the October 2006 altercation and he had experienced chronic nasal obstruction, particularly on the right since that time. He had also experienced periodic bloody noses, ringing and stuffiness in his ears and mild disequilibrium. *Page 4 
11. Plaintiff ultimately underwent surgery on his sinuses on 15 August 2007, at Spruce Pine Community Hospital. Plaintiff subsequently had additional treatment when he developed nose bleeds following the surgery. There is no evidence of record that plaintiff has suffered permanent damage to his eye or sinuses.
12. Evidence was presented by Correctional Superintendent John Crow that he interviewed plaintiff on 15 October 2006 in his office regarding the altercation with inmate Moses. He further testified that when there are visible injuries, medical treatment is provided to inmates within 48 hours. Mr. Crow also noted that while in segregation, plaintiff would have been viewed by correctional officers three times each day.
13. Inmate Moses testified that he was placed in segregation in the cell next to plaintiff following the altercation. He corroborated plaintiff's allegation that no medical personnel came into segregation while he and plaintiff were there.
14. Plaintiff is alleging that he was damaged by defendant's failure to provide timely medical treatment. The evidence presented is insufficient to prove that the failure of defendant to provide plaintiff medical treatment during the period from 15 October 2006, when defendant became aware of plaintiff's injuries, and 24 October 2006, when plaintiff began to receive medical treatment, caused damages to plaintiff. As of 15 October 2006, plaintiff had not only failed to report his own injuries, but had attempted to disguise the injuries for a period of six days. At the time of plaintiff's medical screening on 24 October 2006, plaintiff's visible scars had healed and there was no indication that his nasal pyramid had been deviated as a result of the assault. This condition was not diagnosed until 10 May 2007, despite multiple visits to medical providers.
15. Plaintiff's injuries due to the assault were caused as a result of his own conduct. *Page 5 
 ***********
Based upon the foregoing Findings of Fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. The State Tort Claims Act provides that the State is liable only for the negligent acts of its employees, but not for negligent omissions. N.C. Gen. Stat. § 143-291 et seq.; Isenhour v.Hutto, 129 N.C. App. 596, 501 S.E.2d 78 (1998), aff'd inpart and rev'd in part on other grounds,350 N.C. 601, 517 S.E.2d 121 (1999).
2. In order to prevail in a tort claim filed pursuant to the Act, a plaintiff bears the burden of proving, as at common law: (1) that an officer, employee, involuntary servant or agent of the party-defendant owed the plaintiff a cognizable duty and (2) breached this duty, (3) proximately causing (4) injury to the plaintiff. Bolkhir v. N.C. State Univ.,321 N.C. 706, 365 S.E.2d 898 (1988).
3. Defendant is not the insurer of the safety of every prison inmate in its custody, and cannot be held liable for every injury to an inmate. Taylor v. Department of Correction,88 N.C. App. 446, 363 S.E.2d 868 (1988).
4. In addition to showing negligence on the part of the NCDOC, a plaintiff has a duty to avoid injury as "[r]easonable persons are assumed, absent a diversion or distraction, to be vigilant in the avoidance of injury in the face of a known and obvious danger."Roumillat v. Simplistic Enterprises, Inc.,331 N.C. at 66, 414 S.E.2d at 344. A person who can understand and avoid a known danger but fails to do so is chargeable with contributory negligence. See Presnell v. Payne,272 N.C. 11, 13, 157 S.E.2d 601, 602 (1967). The test for contributory negligence is whether a person using ordinary care for his or her safety under similar *Page 6 
circumstances would have recognized the danger. See Norwood v.Sherwin-Williams Co.,303 N.C. 462, 468, 279 S.E.2d 559, 563 (1981).
5. A claimant whose negligence has contributed to his injury cannot recover under the Tort Claims Act. N.C. Gen. Stat. §§ 143-291; 143-299.1; Crawford v. WayneCo. Bd. of Educ., 275 N.C. 354, 168 S.E.2d 33 (1969).
6. The greater weight of the evidence in this case shows that the assault on plaintiff was not foreseeable by defendant's employees, nor did they have any reason to anticipate the assault. Therefore, plaintiff has not proven that his attack was due to negligence on the part of defendant. Further, by his admitted participation in an illegal gambling operation, plaintiff's own conduct was responsible for his attack. Accordingly, plaintiff's claim for failure of defendant to adequately protect him must fail. Bolkhir v. N.C.State Univ., 321 N.C. 706, 365 S.E.2d 898 (1988).
7. With respect to plaintiff's claim that he was damaged by defendant's negligent failure to provide timely medical treatment, plaintiff has not proven his condition was made worse, or that he was otherwise damaged, by defendant's nine day delay in providing medical treatment after having notice of his injuries. Therefore, plaintiff's claim must fail. Id.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 ORDER
1. Plaintiff SHALL HAVE AND RECOVER NOTHING from defendant.
2. Plaintiff's claims against defendant for damages under the Tort Claims Act are DISMISSED WITH PREJUDICE. *Page 7 
3. No costs are taxed as plaintiff was permitted to file this civil action in forma pauperis.
This the ___ day of September 2011.
 S/__________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/__________ TAMMY R. NANCE COMMISSIONER
 S/__________ LINDA CHEATHAM COMMISSIONER *Page 1